A02A0530. SAGENICH v. THE STATE.
(566 SE2d 327)

BLACKBURN, Chief Judge.

After a jury trial, Brett Sagenich was found guilty of failure to obey a stop sign and two counts of driving under the influence of a controlled substance, per se, OCGA § 40-6-391 (a) (6). The jury found Sagenich not guilty of charges under OCGA § 40-6-391 (a) (1), (2), and (4), driving under the influence of alcohol, a controlled substance, and a combination thereof to the extent that Sagenich was less safe to drive. Sagenich alleges that the trial court erred in sending the police officer's implied consent card and a videotape of the

traffic stop to the jury room since these items acted as continuing witnesses. For the reasons set forth below, we affirm.

Viewing the facts in the light most favorable to the verdict, the record shows that an Atlanta police officer stopped Sagenich after observing his vehicle fail to stop at a stop sign. Thereafter, the officer activated his videocamera. Upon stopping Sagenich, the officer noticed that he had a strong odor of alcoholic beverages and that his eyes were dilated, glassy, and bloodshot. He was fidgety and sniffling during the interrogation. Several field sobriety tests, the horizontal gaze nystagmus test, the modified Romberg test, the nine-step walk and turn, and the one-leg stand, were performed. Based on his observation of Sagenich and the results of the tests, the officer arrested Sagenich and read him the implied consent warning.

Sagenich was charged with driving under the influence of alcohol, per se, driving under the influence of two controlled substances, per se, and several less safe to drive violations. Sagenich submitted to a blood test which indicated a 0.05 blood alcohol content and the presence of two controlled substances. During the trial, the officer's implied consent card from which he had read the warning and the videotape of the incident were admitted into evidence. The videotape was shown to the jury by the prosecution and again by the defense. Both the card and videotape were sent to the jury room during deliberations without objection.

1. Sagenich contends that the trial court erred by permitting the implied consent card to go to the jury room. We disagree. The continuing witness rule prohibits writings from going to the jury room during deliberations when the evidentiary value of the writings depends on the credibility of the writer.

> Documents that are prohibited by the " 'continuing witness rule' " from going out with the jury include answers to written interrogatories, written dying declarations, and signed statements of guilt. These documents, which generally contain their makers' assertions of purported truths, are ascribed evidentiary value only to the extent that their makers are credible.

(Footnotes omitted.) *Bryant v. State*.[1] The rationale for the rule is that the party submitting the writing will gain an unfair advantage over the other side by having the testimony favorable to his case read and reread by the jury. *Gabbard v. State*.[2]

---

[1] *Bryant v. State*, 270 Ga. 266, 270-271 (3) (507 SE2d 451) (1998).
[2] *Gabbard v. State*, 233 Ga. App. 122, 124 (3) (503 SE2d 347) (1998).

The implied consent card is a recitation of the law and does not depend on the credibility of the officer testifying about the traffic stop. Sagenich did not contest the admissibility of the card or that it was the card read by the officer during the traffic stop. The requirement, in *Fields v. State*,[3] that the evidence be consistent with the defendant's theory of the case before being sent to the jury room is applicable only to written or recorded statements. Therefore, the trial court did not err in permitting the implied consent card to be sent to the jury room.

2. Sagenich contends that the videotape of the traffic stop is a "continuing witness," and the trial court should not have allowed it to go out with the jury. The continuing witness rule has been applied to recordings as well as writings. This Court has held that the rule is violated when, for instance, the trial court sends the videotaped interview of a witness to the jury room, *Summage v. State*,[4] or allows a defendant's tape-recorded statement to police to go to the jury room, *Fields*, supra at 243. Unlike a videotaped interview or a transcript of testimony, the videotape of the traffic stop is "independent and original evidence, in and of itself," *Vinyard v. State*,[5] and does not depend on the credibility of the maker for its value. *Brewton v. State*.[6] It is a true depiction of the event. There is no allegation that the videotape did not accurately record the incident or that the video was altered.

The videotape does show the officer advising Sagenich that he believes him to be under the influence of a stimulant. This comment is made for the purpose of informing the defendant why he is being arrested. The error, if any, in permitting the videotape to go out with the jury was harmless. *Kent v. State*.[7] The videotape was played in its entirety, twice during the trial, first by the State and then by the defendant. The videotape was consistent with the theory of defense that Sagenich's demeanor and his performance on the field sobriety tests during the traffic stop show that he was not less safe to drive. *Fields*, supra at 243. Additionally, there was substantial evidence produced at trial, including the blood test results and testimony of both the officer and lab personnel, that the defendant was under the influence of an illegal drug. It is highly probable that the videotape was not determinative of the verdict on the driving under the influence of controlled substances charges. See *Brewton*, supra at 111.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

---

[3] *Fields v. State*, 266 Ga. 241, 243 (2) (466 SE2d 202) (1996).
[4] *Summage v. State*, 248 Ga. App. 559, 561 (1) (546 SE2d 910) (2001).
[5] *Vinyard v. State*, 177 Ga. App. 188, 190 (1) (338 SE2d 766) (1985).
[6] *Brewton v. State*, 174 Ga. App. 109, 110-111 (2) (329 SE2d 270) (1985).
[7] *Kent v. State*, 245 Ga. App. 531, 533 (3) (538 SE2d 185) (2000).

DECIDED MAY 22, 2002 —
RECONSIDERATION DENIED JUNE 7, 2002.

*Spruell, Taylor & Associates, Billy L. Spruell, Melinda D. Taylor,* for appellant.

*Joseph J. Drolet, Solicitor-General, Julie A. Kert, Assistant Solicitor-General,* for appellee.