## A02A2040. MATHEWS v. THE STATE.
(572 SE2d 719)

ELDRIDGE, Judge.

This appeal is from Robert Lee Mathews' conviction for the offense of burglary. Viewed in the light most favorable to the verdict,[1] the evidence shows that on November 27, 2001, Mathews and two friends were in the Quick Serve located at 406 Nathan Dean Parkway, Rockmart, Polk County, Georgia. Frances Pinkard, the manager of the Quick Serve, and Misty Gentry, assistant manager, were outside hanging Christmas lights. Mathews and his friends were inside the Quick Serve sitting at a table eating some snacks and playing the lottery game "Quick Cash" by picking out numbers on the television provided by the store. Entering the store, Pinkard walked down the aisle that led to the elevated office area located at the back of the store to retrieve some hooks for the lights she was hanging and saw someone fumbling with something in front of her desk. Pinkard continued down the aisle, and when she reached the end she encoun-

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

tered Mathews getting up from his hands and knees at the entrance to the office area.

Pinkard testified that in addition to $1,200 in cash, cigarettes and lottery tickets were stored in the office area. Pinkard and Gentry testified that items were out of place on their respective desks; that a drawer in Gentry's desk was open; and that two cigarette boxes had been knocked over and gone through. Because she was concerned that something might have been taken, Pinkard instructed Gentry to stop the videotape recording of the surveillance camera and to call the police. The videotape showed Mathews on his hands and knees both going into the office area and in the office area, and showed him going through desks, cabinets, and boxes of stored items, including some boxes of cigarettes.

Officer Brad Thomas of the Rockmart Police Department responded to the 911 call. Mathews and his friends were still in the store when he arrived, sitting at the table playing the lottery on the television screen. Officer Thomas went into the office area to view the videotape of the surveillance camera. Officer Thomas testified that after he had viewed about one minute of the videotape, which showed Mathews entering the office on his hands and knees and either opening or attempting to open cabinets in the office, Mathews and his friends exited the store. Officer Thomas followed them into the parking lot, and upon questioning, Mathews stated that he was in the office area "looking for a bathroom." In response to Officer Thomas' questions as to why he was on his hands and knees and attempting to open cabinets, Mathews responded he was "just playing around." Pinkard testified that during the 15 minutes between the time she observed Mathews on his hands and knees at the entrance of the office area and the time the officer arrived, Mathews never asked for directions to the bathroom which was located in the front of the store. Mathews and his friends were placed under arrest by Officer Thomas.[2] *Held*:

1. Mathews alleges that it was error to allow the videotape of him in the office area to go out with the jury under the "continuing witness" rule. We disagree.

The videotape was admitted into evidence without objection and was shown to the jury during the trial. At the close of the case, the trial court initially did not allow the videotape to go into the jury room based on Mathews' objection. During deliberations, the jury requested that they be allowed to view the videotape again. Over Mathews' objection, the trial court observed that the videotape did not have audio and concluded that the continuing witness objection

---

[2] It was later determined that Mathews had not taken any items from the office.

would not apply because the videotape contained no statements or testimony and permitted the videotape to be taken into the jury room.

> In Georgia the "continuing witness" objection is based on the notation that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.

(Citation and punctuation omitted.) *Kenney v. State*, 196 Ga. App. 776, 777 (2) (397 SE2d 131) (1990). Documents that are prohibited by the "continuing witness" objection from going out with the jury are usually testimonial documentary evidence and include affidavits, answers to written interrogatories, written dying declarations, and written confessions or statements of criminal defendants. See *Sagenich v. State*, 255 Ga. App. 663, 664 (1) (566 SE2d 327) (2002); *Kenney v. State*, supra at 777. "These documents, which generally contain their makers' assertion of purported truths, are ascribed evidentiary value only to the extent that their makers are credible." *Sagenich v. State*, supra.

> The continuing witness rule has been applied to recordings as well as writings. This Court has held that the rule is violated when, for instance, the trial court sends the videotaped interview of a witness to the jury room, *Summage v. State*, [248 Ga. App. 559, 561 (1) (546 SE2d 910) (2001)], or allows a defendant's tape-recorded statement to police to go to the jury room, *Fields* [*v. State*, 266 Ga. 241, 243 (2) (466 SE2d 202) (1996)].

Id. at 665 (2). Likewise, these recordings also depend on the credibility of the maker for their value. However, "[u]nlike a videotaped interview or a transcript of testimony, the videotape of [Mathews in the office area] is independent and original evidence, in and of itself, and does not depend on the credibility of the maker for its value. It is a true depiction of the event." (Citations, punctuation and footnotes omitted.) Id. Therefore, since the videotape, which contained no audio, was independent and original evidence, did not depend for its value solely on the credibility of the maker and was not a substitute for testimony, it was not subject to the "continuing witness" rule. See *Vinyard v. State*, 177 Ga. App. 188 (338 SE2d 766) (1985).

2. Mathews claims as error the denial of his motion for directed verdict based on an alleged fatal variance between the indictment

and the State's evidence. The indictment alleged that Mathews committed burglary when he "unlawfully and without authority and with the intent to commit a theft therein, enter[ed] and remain[ed] within a room, located at 406 Nathan Dean Parkway, being an office located within a building belonging to Luke Lester, in Polk County, Georgia." Mathews argues that the State failed to prove, as alleged in the indictment, that Lester was the owner of the building.

> Based on *DePalma v. State*, 225 Ga. 465, 469 (3) (169 SE2d 801) (1969), our courts have departed from an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to "affect the substantial rights of the accused." *Shackelford v. State*, 179 Ga. App. 595, 596 (347 SE2d 346) (1986), quoting from *Berger v. United States*, 295 U. S. 78, 82 (55 SC 629, 79 LE 1314) (1935). That decision emphasized that it is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense [and] not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. *DePalma* adopted the holding in the *Berger* case.

(Punctuation omitted.) *Partridge v. State*, 187 Ga. App. 325, 327 (3) (370 SE2d 173) (1988).

In this case, the evidence showed that Mathews, without permission, entered the office area of the Quick Serve located at 406 Nathan Dean Parkway, Rockmart, Polk County, and went through various boxes, desks, and cabinets located therein. Lester was identified by Pinkard as the rightful occupant who had given her the authority to manage the day-to-day operations of the store. Pinkard testified that Mathews did not have permission to be in the office area. Applying the *Berger-DePalma* test, we find no fatal variance between the indictment and the proof. Pinkard's testimony that Lester was the manager of the store and the fact that a certified copy of the deed to the property was not introduced into evidence do not change our analysis. The State proved that the office area was entered without the authority of the lawful occupant. " 'Ownership,' as that term is used in property law, is not an essential ingredient to proving that the premises entered were 'the dwelling house of another [or other building or any room or part thereof]' within the meaning of our bur-

glary law." (Citations omitted.) *Murphy v. State*, 238 Ga. 725, 728 (2) (234 SE2d 911) (1977).

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 16, 2002.

*Meng H. Lim*, for appellant.

*James R. Osborne, District Attorney, Brian P. Duncan, Assistant District Attorney*, for appellee.