A98A1548. NIXON v. THE STATE.
(507·SE2d 833)

MCMURRAY, Presiding Judge.

Defendant was charged in an indictment with two counts of child molestation and one count of cruelty to children. L. G., a female child born December 29, 1982, lived with her grandmother and defendant, her step-grandfather. Although she recanted on the stand, her prior inconsistent statement to the police authorized the following facts: On the evening of Saturday, June 22, 1996, when L. G. was 13 years old, she and defendant were watching television in defendant's bedroom. L. G. was wearing shorts and a T-shirt. Defendant "came over and sat on the bed with [L. G.] . . . and began rubbing on [her] legs[, going] higher and higher[.] . . . [Defendant] touched [L. G.'s] face and said, 'You're so beautiful, you're so beautiful[.]' " "[He] also rubbed [L. G.'s] breast over [her] shirt[.]" L. G. was scared and confused. When she "tried to block [defendant's caresses] with [her] hand . . . Defendant pulled [L. G.] by [her] legs to the edge of the bed . . . [and] then unbuttoned [her] shorts with one hand and with one hand held [L. G.] down on the bed[.]" When L. G. "struggled a little bit [defendant] said, 'Be still.' [H]e got [L. G.'s] shorts and underwear down to [her] mid-thigh. . . . [Using] his left hand to hold [L. G.] down, . . . with his right hand [defendant] inserted two of his fingers, one being

his index finger, into [L. G.'s] vagina. R. R. G., L. G.'s stepmother, related L. G.'s statement that she moved from defendant's home because "she was molested by her grandfather." But L. G. later told R. R. G. "that she was going to change her testimony because she didn't want her mother and her grandmother put out on the street."

S. M., born February 20, 1978, is defendant's granddaughter. In late 1993, when S. M. was a 15-year-old sophomore in high school, she was watching television in defendant's bedroom. Defendant "usually rubbed [S. M.'s] back when [she] went to bed. [This night,] one thing led to another, and [defendant] fondled [S. M.] with his fingers[, putting] his fingers inside of [her] . . . vagina."

T. J., born September 12, 1992, is defendant's stepgrandson. When T. J. was three years old, the boy "poked [another child's] butt with his finger[, asking did that child] want to play butt games like he [T. J.] played with his Papa," that is, defendant. Terry Cone, M. D., examined T. J. on December 5, 1995. He discovered "in the midline between the folds of the two buttocks, about an inch or an inch and a half above the rectum, there was a fissure — which is a tear in the skin — along the line of the fold, with some slight white coloration of the skin around it." This was consistent with "persistent rubbing possibly, not one particular episode. . . ." On January 9, 1997, approximately one year after this event, Officer Gail Solomon, of the Columbus Police Department's Sex Crimes Unit, interviewed T. J. and recorded the boy's statement "that he [defendant] stuck his finger in his [T. J.'s] butt."

Defendant denied the charges and produced evidence of his good character. Nevertheless, the jury found defendant guilty as charged on all three counts. Defendant's motion for new trial was denied and this appeal followed. *Held*:

1. Defendant's eighth enumeration contends the trial court erred in permitting audiotaped statements of T. J. and L. G., along with transcription of those tapes, to go out with the jury during their deliberations, over defendant's objection that this would "place undue influence on that portion of the evidence." We agree this procedure was error but find that error to be harmless under the particular facts of this case.

An hour into deliberations, the jury asked to review the taped statements. In response, the trial court charged the jury: "Now, I would like you to understand this, too: It's fine for you to have them [tapes and transcripts]. I'm going to let you have them. It's within the discretion of the Court. But I want — even though I'm letting you have them, I don't want you to add any particular emphasis to them. I want you to consider them in light of all the other evidence and all the other testimony. With that curative instruction, if you will, I'll send them to you briefly." State's Exhibit 4, the transcript of four-

year-old T. J.'s statement is 13 pages long, but half the questions posed by investigators were greeted with silence or unresponsive statements. L. G.'s transcribed statement is three pages, and contains only one paragraph implicating defendant. Eighty-five minutes later, the jury recessed for the night, with instructions to "[r]eturn in the morning at 9:00." At 10:00 a.m., the jury returned its verdicts.

Defendant "correctly contends the trial court erred in allowing [the] recorded statement[s] of [four-year-old T. J. and fourteen-year-old L. G., with transcripts] and a tape player to go out with the jury. Our courts have consistently held that it is error to allow a jury to take written or recorded statements into the jury room during deliberations unless those statements are consistent with the defendant's theory of the case. See, e.g., *Lane v. State*, 247 Ga. 19, 20 (273 SE2d 397) (1981); *Heard v. State*, 169 Ga. App. 609 (314 SE2d 451) (1984)." *Fields v. State*, 266 Ga. 241, 243 (2) (466 SE2d 202). Accord *Strickland v. State*, 167 Ga. 452, 460 (6) (145 SE 879). But it has also "been recognized for more than 100 years that it is permissible for the trial judge, in his discretion, to permit the jury at their instigation to rehear requested parts of the evidence after they have retired and begun deliberations. *Allen v. State*, 187 Ga. 178, 183 [(6)] (200 SE 109) (1938); *Green v. State*, 122 Ga. 169[, 170 (1)] (50 SE 53) (1905); *Green v. State*, 43 Ga. 368, [373 (5), 374] (1871)." *Byrd v. State*, 237 Ga. 781, 782 (1) (229 SE2d 631). See also *Brooks v. State*, 231 Ga. App. 561, 564 (4) (500 SE2d 11); *Barnes v. State*, 230 Ga. App. 884, 885 (2), 886 (497 SE2d 594); *Payne v. State*, 219 Ga. App. 318 (2), 319 (464 SE2d 884). We must test for harm as well as error. *Owens v. State*, 248 Ga. 629, 631 (284 SE2d 408).

We can say with confidence that the procedural error in permitting the recorded statements of T. J. and L. G. (guided by transcripts) to be played again for the jury in the jury room during deliberations did not contribute to these verdicts, for it amounted only to rehearing admissible material evidence, albeit at an unauthorized place. The tapes are brief, and the qualified jurors, under oath, are presumed to follow the trial court's procedural and limiting instructions. *Harris v. State*, 202 Ga. App. 618, 619 (3) (a), 620 (414 SE2d 919); *Dykes v. State*, 191 Ga. App. 879 (2), 880 (383 SE2d 210); *Truitt v. State*, 168 Ga. App. 616 (1), 617 (309 SE2d 895). "[T]he jury should be permitted to limit what they rehear to what they desire to rehear, absent special circumstances which might work an injustice." *Byrd v. State*, 237 Ga. 781, 782 (1), 783, supra. "[T]he issues presented by the tape[s] [and transcripts] had been properly placed before the jury as the tape[s] [themselves were] properly admitted into evidence and had been heard by the jury (and could have been reheard in open court). This fact, along with the [ample corroborative] evidence on the same issues [and the trial court's contemporaneous limiting instruction],

makes it highly probable that the [procedural] error of allowing the tape[s] [and transcripts] to go to the jury room did not contribute to the judgment." *Owens v. State*, 248 Ga. 629, 632, supra. "Where there is other evidence relating to the same issues the error addresses, especially where it is overwhelming, it is highly probable the error did not contribute to the judgment. [Cits.]" *Owens v. State*, 248 Ga. 629, 631, supra. In the case sub judice, L. G. and S. M. gave identical descriptions of defendant's modus operandi, thereby independently corroborating each other's testimony. As to all three incidents, there is evidence of outcry and permissible child hearsay statements. As to T. J., there is expert medical opinion that relates the physical evidence to indecent liberties. Also, T. J. acted out his experiences in front of adults. The totality of the direct and circumstantial evidence is overwhelming that defendant committed the two acts of child molestation and one act of cruelty to children as alleged in the indictment. Consequently, it is highly probable that the procedural error in permitting the tapes of relevant and material evidence to be replayed for the jury during their deliberations (rather than in open court) did not contribute to the judgment. *Owens v. State*, 248 Ga. 629, 632, supra.

2. Defendant's remaining seven contentions have been considered. Objections to evidentiary rulings regarding the admissibility of statements by children recounting episodes of sexual contact or physical abuse are without merit. OCGA § 24-3-16. Limitation on cross-examination of the victim S. M. under OCGA § 24-2-3, the Rape Shield Law, precluding examination of whether she was dating an older man did not preclude questioning whether she had a motive to fabricate the allegations due to conflicts with defendant over parental discipline. Evidence from eyewitnesses that T. J. acted out or acted inappropriately with other children was not proof of defendant's extrinsic acts and so was not inadmissible because of any failure to comply with the notice and hearing requirements of Uniform Superior Court Rules 31.1 and 31.3. After defendant placed his character in issue, evidence of similar transactions or occurrences, otherwise admissible according to the rules of evidence, was admissible notwithstanding those notice and hearing requirements. Uniform Superior Court Rule 31.3 (D). The second enumeration is without merit. The prosecutor's closing argument about medical testimony was a reasonable inference based upon the evidentiary posture of this case. The seventh enumeration is without merit.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED OCTOBER 7, 1998 —
RECONSIDERATION DENIED OCTOBER 20, 1998 — 

*Hagler, Hyles & Adams, Richard C. Hagler*, for appellant.
*J. Gray Conger, District Attorney, Patrick B. Moore, Assistant District Attorney*, for appellee.